2016-1028, Mr. Shulman. May it please the Court, we are here because the District Court fundamentally erred in its construction of the claim term, said capsule that is size 00 or less. The intrinsic evidence shows that the phrase size 00 has an ordinary meaning that includes any capsule with that designation, including an elongated version. The patentees during prosecution explicitly stated that size 0 capsules are one size smaller than in the claimed invention. Now, under the District Court's construction, that size means precisely that size. That statement can't be squared. But the claim says 00 or less, right? Correct. And so you want to bring something that is elongated, which is obviously more, into a claim that says or less, and clearly the claim is leaning beyond, if it had said 00, it might be a different story. But this is 00 or less. It's interesting you say that, Your Honor, because I think the example I would use is if I went to a store this afternoon and they said we're having a sale for all people that are suit size 44 or less, and I was a 44 long, I would expect to get that discount, because I'm a size 44 or less. And so I think that the claim language, especially when it says said capsule that is size 00, if it really meant only one capsule, the 00, it would say, the size 00 capsule. The patentees actually chose to claim using different language, said capsule that is size 00. They did not specify a length. They did not specify a volume. And if you take the District Court's construction... Well, let me... I mean, using your own analogy, I get what you're saying, that size 44 and size 44 long, you would view them as the same. But if you were talking about not just the length of the coat, but the volume of what goes inside of it, couldn't there be a distinction? Yeah, but think about a 42 extra wide. I mean, the volume of that might be larger than a 44 long. But we in common parlance would still agree, I think, that the person that comes in as a 44 long would be entitled to the discount if the discount is triggered by size 44 or So you don't agree that there is a volumetric measurement that's different between the two? Between 00 and 00 elongated? Mm-hmm. Yes, and in fact, we know that the examiner, I think, shared our view that the elongated size 00 capsules are included within the size 00 capsules instantly claimed, and that's his phraseology from, I think it's A228. We know that because when you do the math, and we set this forth in our briefs, you can only do the math if you take the 1.02 milliliter volume of the elongated 00 capsule minus 0.68 for the non-elongated 0 capsule, you get 0.34. That is precisely 50% of 0.68, which is the volume of the non-elongated size 0 capsule. If there was contemplation of the elongated capsules, how hard would it have been to simply mention that in the written description? Well, I think that that would make patents inordinately long. I mean, we are entitled to use and rely upon what is known to people of ordinary skill in the art. As you recall, we asked their experts, the people that they propose have the requisite skill and expertise in this field, we said, what does it mean when you say 00? And their expert, Dr. Banker, said, that tells you the diameter. That is the ordinary meaning. We asked their other expert, Dr. Goldberg, and he said, if you just said size 0 to a capsule supplier, they would come back to you and say, well, which one do you mean? That is because in this field, in this industry, the size designator includes both elongated and non-elongated capsules. That's just the way that the industry has grown up. We explain the history and how these came to be. But doesn't the which one do you mean sort of cut both ways here? I mean, wouldn't that also mean that they are two different things? No, it means that they are both within the size designator, but that you have to specify when you have a particularized need to specify the other dimensions. In other words, if you have a fill amount, a particular drug that you need to get into a capsule, you know the amount of the active ingredient, et cetera, when you have a particularized need to say, I need this particular volume, then you might specify what you mean elongated or non-elongated. Otherwise, it means both. It can be both. And you've got an example of that in the Health Caps USA reference. You've got an example. I think the best one is the GPHA, the Generic Pharmaceutical Industry, Association, excuse me. Are we even allowed to consider that extrinsic evidence? I mean, if we conclude that there's not enough in the intrinsic record, wouldn't we have to send it back? Perhaps. I simply use it to say, are we offering an ordinary median construction? And when the GPHA says, in this field, typically, going from zero to size zero. Well, I understand that's what you're offering it for. You're offering it for a different claim construction. The way this court addressed it was to simply say, I don't even go there. So as a result, we're stuck with looking at only the intrinsic record. And if we can't decide, if we think it's not clear, then it has to go back, doesn't it? I think that if you think that it's not clear, then I would agree with you. I would urge you that I think that it is clear. The reason I mentioned the GPHA is just to, I think, acknowledge that when they say typically, then I think it's hard for anyone to accuse us of anything other than the ordinary median. I mean, that's what's typical in this field. And it may seem a bit arcane, but that's exactly why, when you're construing technical terms of art, that you need to be careful that you're coming at it from the perspective of the person of ordinary skill. What in the intrinsic record do you think indicates what the ordinary meaning to one of skill in the art would have been as of that relevant point in time, other than your argument that you think that's what the examiner thought? Two things. The first, and I think the most important, is when we said to the board that the zero capsules of the prior art were one size smaller than in the claimed invention. That's at A2883. That can only be true using our construction. The reason why is that it was known in the field that there were zero elongated capsules. So if you take the district court's construction that it's precisely that capsule, then you've got a two size increase. It would be zero non-elongated from the Dennett reference, to the zero elongated that was known in the field, to double zero non-elongated of the preferred embodiment of the 032 patent specification. So that would be two sizes. But we said that the prior art was only one size smaller than in the instant, in the claimed invention. That indicates to a person of ordinary skill in the art that we are using size to indicate any capsule of that designation, including elongated. And then we have the math of the... At what point in time did the elongated capsules become something that was regularly used? I do not. That's not in the record that I'm aware of, Your Honor. I do know that there are references from 2002, for instance, the Banker reference, explains that there are zero elongated and zero, zero elongated capsules that are in the field. That is at... That is at A1704. You also have the Ridgeway reference, which is in the 2000, I think the 2000 time frame. That's A2672 that says for each capsule size, and it lists them number zero, one, two, three, et cetera. There is both a standard length and an elongated length. And so that is the evidence from the record as to their, the use of the elongated capsules. And what was the application date here? 2005. Is the provisional. Now, moving on through the intrinsic record, I think we have the math from the examiner and the prosecution history. We have the claim language, as I indicated, that I think put the analogy to size 44 long. The specification, you know, the district court fundamentally erred in its analysis there because it said that the specification, the strong piece of evidence that the district court relied on was the fact that in one of the embodiments, it was in a non-elongated 00 capsule. But as this court has repeatedly held, you know, we don't read the embodiments into the claims absent, you know, extraordinary circumstances. And here, the embodiment itself explicitly says that it is limited to being according to one embodiment of the invention. That's A6 at column three, lines 29 to 31. So in those circumstances under this court's precedent, you can't read that embodiment or limit the claim scope to that single embodiment. Do you agree that the extrinsic evidence sort of has something for everyone, that there is some support for your construction and some support for the opposing construction? I think that it's near uniform, but I think that there is at least one piece of evidence from the extrinsic that arguably would be in their favor. But I think when you've got the unanimity of experts, when you have our two experts, Dr. Park and Mr. Silverman, and you've got both of their experts acknowledging that when I say to you, size 00, what comes to your mind? Well, I know that I am there. And when you ask the other expert, what would happen if you would call a supplier, because that's how this works in the field. You know, you call a supplier and you say, I want a size 00 capsule, he said, they would ask you, which one do you mean? Because the meaning encompasses both elongated and non-elongated. So you would put the same volume of granules in the elongated capsules as you would in the non-elongated capsules, even though the former can hold more? Certainly you could. I don't imagine that many people would do that. But doesn't the claim call for a precise volume? No. In fact, I would suggest the opposite of what the claim says. We deliberately chose not to claim a volume. We claimed a size of capsule. We could have specified a length. We could have specified a volume. We did not. And I think that that's one of the problems with the district court's construction is that it improperly and erroneously implies that we chose language that we did not. Under this court's authority, we're entitled to the broadest ordinary meaning of the terms from the perspective of a person of ordinary skill in the art. Well, the Urazi Declaration does claim a specific volume, does it not? It doesn't claim it. I'm sorry. Recite it. It does explain an experiment that she did, a comparative experiment that did use a non-elongated size 00 capsule. What she did was she tested the preferred embodiment, which if you look at her declaration, the example it says, this is an example, and then using good scientific practice, she used the same as her preferred embodiment to test the Nikai prior art process. Mr. Peele, you're in for your rebuttal time, which you'd like to save? I would like to save it unless there's any further questions at this time. Mr. Silver? Pardon me. May it please the court, good morning. I'm Robert Silver on behalf of Appley. As to housekeeping matters, I believe counsel may have misspoken when he said bridgeway reference at 1550 is from 2002. I believe it's from 1987. That reference specifically says that elongated versions at that time period were only available on special order. Also as a housekeeping matter, we submit that there are four references that Roxanne submitted in its opening brief in the section entitled Other Authorities that were not in the record below, namely the final FDA draft guidance and the three references they use to equate needle gauge and suture size to capsule size, and therefore we don't believe those are probably before this court for failing to be in the record below. We submit that the district court was proper in using only intrinsic evidence and cited several times Your Honor's opinion in Phillips and also Judge O'Malley's key pharma, which said that the specification is the single most important guide and that uncorroborated expert testimony is rarely reliable to the court. And the danger in relying on extrinsic evidence in this case is illuminified by going back to the preliminary injunction stage. Roxanne's first definition of capsule size said that capsules came in families and their expert, Dr. Park, stuck out his neck and said there are families of capsules. And I criticized that at the preliminary injunction stage because I told Judge Chesler that after hours of searching, there was no document I could find that said that capsules came in families. And in fact, Judge Chesler put forth in his opinion, he queried whether there was such a metaphor as capsules of families. And so they dropped that argument. And as Your Honor said to Roxanne at the last hearing, well, don't you get a second shot at claim construction? Counsel, we speak for the court when we write opinions. And so they dropped that argument because there is not a single reference in the extrinsic or intrinsic evidence that equates capsules to families. They now rely upon diameter and they say, well, let's, diameter alone determines capsule size. And on page 33 of their opening brief, they say length is immaterial to capsule size designation. And I posited this example the last time, since they say length is irrelevant, let's take a 12-inch long capsule that's the same size as 00. There's no way in the world most people are going to be able to swallow a 12-inch long capsule, but they say length is irrelevant to determining capsule size. But then when you go into their proposed definition, which was completely different from the preliminary adjunction statement, they say, well, you know, size 00 is the same diameter regardless of length because that relates to swallowability. So they link diameter to swallowability. Judge Chesler found in his opinion swallowability was, quote, yet another unpersuasive tangent. They then link swallowability to pharmaceutically acceptable. So now you have to have, it has to be pharmaceutically acceptable, it has to be for oral consumption, it has to be swallowable, and it has to have the same diameter regardless of length. And the extrinsic evidence not only contradicts the intrinsic evidence, but it contradicts their own construction. Let's stick with the intrinsic evidence because if we get to extrinsic, I think that we can't If you look at the intrinsic evidence, which, I'm sorry. I have to speak until I'm done, and then you get to talk. But if we get to the extrinsic evidence, I don't think we're allowed to make findings based on that extrinsic evidence. So we've got to find if there is enough in the intrinsic record. And it's pretty thin here. So let's just focus on what's in the intrinsic record. Certainly, Your Honor. If you look at the intrinsic evidence, they relied upon in the Arezzi Declaration and attached to their appeal brief is the Lightfoot reference. And when you look at the Lightfoot reference, which is at 303 to 307, the first page, Table 1, has a table of capsule sizes. And the only thing that it mentions there is powder tap density and volume. And they distinguish between 00, 000, 00EL, 00, and they always set... Which table are you on? Table 1, just below the photograph of the capsule. I'm sorry, it may be on A386. So that's a different reference? Well, I have this one here, Your Honor. I've got one at 303 with the Table 1 underneath the picture. Is that... Yes, that's the one I'm referring to. And if you see there, that reference only differentiates based on volume. And as our expert, Dr. Osperger, said, that's what a pharmaceutical formulator would rely upon. And what is happening is that, according to Dr. Osperger, they're conflating pharmaceutically acceptable with patient acceptable. Not every patient can swallow even a 00 capsule. And so, therefore, formulators, based on the intrinsic evidence, look to volume. You're not going... If you're going on an overnight trip and you have three pieces of clothing, as I believe Your Honor raised this question to my opponent, even though you could fit it in a larger volume, you're not going to use it. I mean, if you have three pieces of clothing, you can put it in a satchel that you can carry on an airplane. You're not going to put it in a steamer trunk. Because the larger the size capsule, the more expensive. And Dr. Urazi came out and said in her declaration, although I believe her statement was false, that 00 is the largest acceptable capsule that can be swallowed, despite the fact that she attached Lightfoot that shows that 000 can be swallowed. And we submit that their definition, which is like a chameleon, is just... It just doesn't make sense because... Also, because their definition requires swallowability or oral consumption. If you look, for example, at their own experts' treatise at 2150 or Durgan's at 1762, they describe how 000 capsules cannot oftentimes be swallowed by either the elderly or the children, so you can merely twist the capsule apart, put the contents in it into a juice or applesauce, and immediately consume it. Well, in that case, there's no oral consumption of the capsule. Does that mean it's not pharmaceutically acceptable? Of course not. It just means that some people can't swallow it. And, you know, the claims should be given their ordinary construction, as Judge Chesley stated when he cited Phillips. And I think Roxanne's argument that merely focuses on diameter ignores the fact that other factors, such as length, surface area, shape, and volume, relate to swallowability. Thank you. Anything further, counsel? No, not at this time, Your Honor. Thank you. That's the only time you have. I understand that. Thank you. Mr. Shuler, you have a little rebuttal time. Thank you, Your Honor. I think the salient consideration here is that Imogen hasn't addressed the intrinsic evidence. I mean, the prosecution history statement alone shows that we were using the phrase Psy00 according to its ordinary meaning to encompass more than simply a non-elongated capsule. You cannot square that statement with the district court's construction. But you agree that Lightfoot is part of the intrinsic record. Yes, but Lightfoot actually shows the examiner's math. That's exactly the spring point from us showing that the volume that's there, 1.02, is the only volume that can get you to 50% larger volume for a 00EL capsule. So the intrinsic evidence shows that Dr. Urazi and the examiner were speaking the same language. They understood that it was simply a matter of math and that one could figure out the fill amount from the volume and the bulk density. And so if you recall from the prosecution history, the examiner's response to her declaration was telling. By the way, it's in our brief and the calculations in the record at A2473. We showed below that you can do simple math and the 00EL capsule will not fill the requisite fill amount of the Nikai material. And that's in our opening brief and footnote 8 at page 40 of our opening brief. So the intrinsic record, which is what this court says it needs to look at, you have the prosecution history statement by us, you have math in several places by the examiner that reflects the volume and light foot of a 00EL capsule, you have statements in the prosecution history that we were explaining that it's any capsule having size 00, which again is consistent with our construction, and you've got really the district court's decision being predicated on basically restricting us to one embodiment in the specification, which under this court's precedent is error. The claim language itself, as we discussed earlier, is amenable to our proposed construction. We're entitled to the broadest reasonable construction, and I think that that's probably all I need to say. I mean, I think the intrinsic record is fairly cogent here. The broadest reasonable construction? I'm sorry. We're entitled to the ordinary meaning. I mean, that's what we're searching for under Phillips. We're searching for what would a person of ordinary skill in the art understand this claim to mean? And I want to reemphasize that at A228, the examiner said a size 0 capsule is 50% smaller than the size 00 capsules instantly claimed. When we made our statement, we tied it to the claim dimension, so we know we were talking about the phrase at issue. And when the examiner says that and he says 50%, and the only math that makes that work is the light foot reference with the volume of 1.02 milliliters, I think you understand that those two people of skill in the art, the examiner and Dr. Urazi, were speaking the same language, and it dovetails with our construction. Do you have a DOE claim? Under which claim? For which element? For this issue? No, because it was added by amendment. Okay. Thank you. Mr. Shuler will take the case under advisement.